IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOHN CURTIS WILLIAMS, | ) | |
| | ) | |
| Debtor/Appellant, | ) | Civil Action No. 1:20-cv-1206 (RDA/IDD) |
| | ) | Bankruptcy Case No. 20-11645-KHK |
| v. | ) | |
| | ) | |
| THOMAS P. GORMAN, | ) | |
| | ) | |
| Trustee/Appellee, | ) | |
| _____ | ) | |
| KAREN MOSS KELLY, | ) | |
| | ) | |
| Debtor/Appellant, | ) | Civil Action No. 1:20-cv-1443 (RDA/IDD) |
| | ) | Bankruptcy Case No. 19-12083-KHK |
| v. | ) | |
| | ) | |
| THOMAS P. GORMAN, | ) | |
| | ) | |
| Trustee/Appellee, | ) | |
| _____ | ) | |
| ADELE MOORMAN POLK, | ) | |
| | ) | |
| Debtor/Appellant, | ) | Civil Action No. 1:20-cv-1449 (CMH/JFA) |
| | ) | Bankruptcy Case No. 19-12514-KHK |
| v. | ) | |
| | ) | |
| THOMAS P. GORMAN, | ) | |
| | ) | |
| Trustee/Appellee. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Appellants John Curtis Williams's, Karen Moss Kelly's, and Adele Moorman Polk's appeals of the United States Bankruptcy Court for the Eastern District of Virginia's ("Bankruptcy Court") Orders Of Dismissal in their bankruptcy actions. *See* 1:20-cv-1206 (Dkt. 3-1); No. 1:20-cv-1443 (Dkt. 3-1); No. 1:20-cv-1449 (Dkt. 3-1). The Court dispenses with oral argument because it would not aid in the decisional process. Fed. R. Civ. P.

78; E.D. Va. Loc. Civ. R. 7(J). Accordingly, this matter is now fully briefed and ripe for decision. The Court has reviewed the record, the briefs of Appellant Williams, Appellant Kelly, and Appellant Polk, and Appellee's consolidated brief. Having considered the issues presented in this appeal, the Court affirms the judgment of the Bankruptcy Court in each of the consolidated cases for the reasons that follow.

## I. BACKGROUND

### A. Procedural Background

This is a consolidated appeal involving three separate bankruptcy cases. Although the facts of each case vary, they all involve the same bankruptcy trustee—Thomas P. Gorman—the Appellee. They also share a procedural similarity, in that none of the debtors (Appellants here) in their bankruptcy proceedings filed a written brief opposing the trustee's Motion to Dismiss as required by Local Rule 9013-1(H)(1) of the Bankruptcy Court.

The three cases were all initially filed in the Bankruptcy Court and dismissed after the court below granted Appellee's Motion to Dismiss. *See* Order, *Polk v. Gorman*, No. 19-12514-KHK (Bankr. E.D. Va. Nov. 19, 2020) (Dkt. 52); Order, *Kelly v. Gorman*, No. 19-12083-KHK (Bankr. E.D. Va. Nov. 11, 2020) (Dkt. 56); Order, *Williams v. Gorman*, No. 20-11645-KHK (Bankr. E.D. Va. Oct. 7, 2020) (Dkt. 15). On January 7, 2021, Appellee filed a Motion to Consolidate these bankruptcy appeals, which this Court granted on April 2, 2021. Civil actions 1:20-cv-1443 and 1:20-cv-1449 were consolidated into 1:20-cv-1206. Appellant Williams filed his memorandum on November 30, 2020, Appellant Kelly filed her brief on January 19, 2021, and Appellant Polk filed her brief on December 8, 2020. Appellee filed his brief on May 3, 2021. Appellants have each designated their respective bankruptcy records on appeal: Williams filed on November 10, 2020, Kelly filed on December 17, 2020, and Polk filed on December 23, 2020.

B. Factual Background

1. Appellant Williams's Case

Appellant Williams filed for bankruptcy relief under Chapter 13 on July 16, 2020. He noted that he was ineligible to file a new Chapter 7 case as eight years had not passed since his first Chapter 7 filing. Dkt. 6 at 5. Williams's Chapter 13 repayment plan proposed monthly payments of $100 for a period of thirty-six months. *Id*. The majority of these payments would go toward counsel fees. Dkt. 3 at 2. Appellee—Chapter 13 trustee, Thomas P. Gorman—objected to this plan. *Id.* Appellee then filed a Motion to Dismiss the case, citing Appellant Williams's lack of good faith and unreasonable delay to creditors. *Id.*

In his Motion to Dismiss and the subsequent hearing in Bankruptcy Court on October 1, 2020, Appellee argued that Appellant Williams had filed a Chapter 13 case disguised as a Chapter 7 case because he was ineligible for Chapter 7 relief. *See* Dkt. 3 at 5*.* As Appellee would suggest, Williams had filed for Chapter 13 bankruptcy with a conspicuously modest proposed repayment plan, which would allow him to stall until enough time had elapsed such that he could then refile a new Chapter 7 case. This, according to Appellee, evinced a lack of interest in filing for Chapter 13 relief and an attempt by Williams to circumvent the Bankruptcy Code. *Id.* Appellee also pointed out that Appellant Williams had no significant property interests that were being preserved under his Chapter 13 bankruptcy filing. Dkt. 3 at 6.

Appellee maintained that Williams's attempt to obtain bankruptcy relief constituted bad faith based on his true intent in filing a Chapter 13 plan and the fact that his proposed repayment plan was lower than his monthly income. *Id.* At the hearing, Williams admitted that he earned roughly $10,000 a month, of which $3,600 was derived from his Veteran's Affairs (VA) benefits. Dkt. 3 at 3, 6. Appellee expressly noted that roughly 85 to 90 percent of Appellant Williams's

debt came from student loans; however, Williams also carried about $30,000 in non-student loan debt that his proposed plan left largely unaddressed. *Id.* Appellant Williams did not file a written brief opposing the Motion to Dismiss or the trustee's objection despite having notice. Dkt. 14 at 6, 9.

Although Appellant Williams did not file a written brief, he availed himself of his opportunity to present evidence at Bankruptcy Court's hearing. *Id.* Appellant Williams argued that his VA benefits should have been excluded from the good-faith inquiry regarding the proposed repayment plan. *Id.* at 6. Interestingly, Williams further argued that the absence of good faith in a plan does not necessarily mean the plan was filed in bad faith, arguing that affirmative evidence of bad faith is required. *Id.* at 4. After oral argument concluded, the Bankruptcy Court dismissed the case without prejudice. *Id.* at 5. The Bankruptcy Court found that Williams did not file his Chapter 13 case in good faith. According to the Bankruptcy Court, the plan offered a minimal amount of compensation of the original debt to the creditors, and his take-home income was significantly greater than the original repayment plan. Dkt. 3 at 6. The Bankruptcy Court entered its Order of Dismissal on October 7, 2020. *Id.* Appellant Williams appeals that order.

## 2. Appellant Kelly's Case

Appellant Kelly filed for chapter 13 bankruptcy relief on June 25, 2019. On October 30, 2019, the Bankruptcy Court confirmed the plan she proposed, which entailed a one-hundred percent repayment of her debt, to be paid in monthly installments of $500 for sixty months. Her main source of income was Social Security benefits; therefore, Appellant Kelly was responsible for making her monthly payments directly to the Chapter 13 trustee (Appellee) throughout her case. On June 26, 2020, after making twelve monthly payments via check to the trustee, the Bankruptcy Court issued an agreed-upon order after two of Appellant Kelly's checks bounced.

The Bankruptcy Court's new order required Appellant to cease making payments by regular check and instead make payments by "certified funds."

After the Bankruptcy Court entered this payment-method order, Appellant violated this directive by sending a check through an application called "Bill Payer" in October 2020. That check also bounced. On October 23, 2020, Appellee filed a motion to dismiss, seeking dismissal of Appellant Kelly's case under 11 U.S.C. § 1307(c) and 11 U.S.C. § 1307(c)(1) due to her failure to abide by the court's order.

Appellant Kelly immediately substituted her bounced checks with another personal check, which did clear. On November 12, 2020, the parties appeared before the Bankruptcy Court for a hearing regarding Appellee's Motion to Dismiss, where Defendant's counsel suggested a compromise of a "drop dead order" as an appropriate "punishment that fits the crime." Dkt. 4 at 7. This proposed "drop dead order" asked the Bankruptcy Court to retain her case, on the condition that any future violations of its order would result in immediate termination of her bankruptcy action. *Id.* The court declined, instead dismissing the case with prejudice and prohibiting Kelly from refiling for bankruptcy for 180 days under 11 U.S.C. § 109(g)(1). *Id.* at 7-8. The Bankruptcy Court found that Appellant Kelly's conduct in ignoring its payment-method directive demonstrated a lack of good faith and "caused unreasonable delay" under 11 U.S.C. § 1307(c). *Id.* at 9. Kelly appeals that order.

### 3. Appellant Polk's Case

Appellant Polk filed for bankruptcy relief on March 21, 2019 and obtained a Chapter 7 discharge on June 27, 2019. Dkt. 2 at 5. Polk then filed for Chapter 13 bankruptcy to prevent a

foreclosure on her home. *Id.* at 6.[1] Polk reported on her bankruptcy schedules a monthly income of $4,057 based on her pension and Social Security benefits. *Id.* Her monthly mortgage payments were about $1,500, and her mortgage arrearage amounted to roughly $22,000. *Id.* Appellant Polk proposed a plan in which she would have paid $610 per month for five years to catch up on the arrearage in addition to paying off about $10,000 she still owed on her vehicle. *Id.* After Polk filed an Amended/Modified Chapter 13 Plan with the Bankruptcy Court on October 31, 2019, a court order entered on December 20, 2019 confirmed the amended plan. That order required monthly payments of $650 for two months and then $610 per month for the remaining fifty-eight months, starting on August 30, 2019. Dkt. 14 at 18.

Polk did not comply with the terms of the amended plan requiring timely mortgage payments. *Id.* Then, on August 21, 2020, Polk's mortgage lender filed a Motion for Relief from Stay, alleging that the post-petition mortgage was in default for the year-long period between August 1, 2019 through August 1, 2020. *Id.* In other words, Appellant had not made a single direct mortgage payment since filing for Chapter 13 bankruptcy. *See* Dkt. 14 at 18; No. 1:20-cv-01449-CMH-JFA (E.D. Va. Dec. 23, 2020) (Dkt. 2 at 6).

On September 3, 2020, the Bankruptcy Court ordered Polk to file an amended plan by September 17, 2020 and to cure her post-petition mortgage default and attorneys' fees, an amount that totaled $20,366. Dkt. 14 at 18. Although she missed this deadline—prompting Appellee to file a Motion to Dismiss on October 2, 2020—Polk eventually filed an amended plan on October 28, 2020. That modified plan proposed that Polk would make payments of $618 monthly for

---

[1] Because she had a previous Chapter 7 discharge, Appellant Polk's chapter 13 filing became an idiomatic "Chapter 20" bankruptcy filing, as the initial Chapter 7 discharged lessened the original debt for the Chapter 13 case. *See id.*

6

fourteen months, followed by $1,100 monthly payments for forty-six months. Polk proposed to maintain this plan by reducing her overall monthly expenses. Dkt. 14 at 19.

Appellee then objected to confirmation of this Chapter 13 Plan on grounds of feasibility and good faith. The trustee argued that Appellant Polk had already sought to cure $22,500 of pre-petition mortgage arrearages, which she had thus far funded with payments totaling $8,660, but then sought to add a new post-petition mortgage arrearage of $20,366. *Id.*

On cross-examination, Polk suggested that her daughter hoped to return to college so that she might gain employment and assist with the household budget. *Id.* at 21. But Appellant Polk's daughter offered no timeline for gaining employment and acknowledged that education costs would also be borne by the household as another expense. *Id.* After reviewing the testimony, the Bankruptcy Court dismissed Polk's case under 11 U.S.C. § 1307(c)(8) on feasibility grounds, stating that Appellant Polk's budget would be too thin to absorb these increased costs and cure the additional arrearage without an increase in income. *Id.* The Bankruptcy Court found that the proposed monthly budget plan for two persons would be too burdensome. *Id.*

## II. STANDARD OF REVIEW

"When reviewing a decision of the Bankruptcy Court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526-27 (E.D. Va. 2010) (citation omitted). Thus, the district court reviews questions of fact under the "clearly erroneous" standard. *Id.* "The clear error standard requires 'a reviewing court [to] ask whether on the entire evidence, it is 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (third level quotations and citations omitted)). Legal conclusions are reviewed *de*

*novo*. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). In cases where the issues present mixed questions of law and fact, the Court employs "a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996) (citation omitted). Decisions committed to the bankruptcy court's discretion are reviewed for abuse of discretion. *See Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992).

### III. ANALYSIS

Appellants raise several issues on appeal, many of which were not raised in the Bankruptcy Court. Some issues asserted for the first time on appeal were never presented in written memoranda, whereas others were at least raised orally during hearings in the proceedings below. Appellant Williams argues that merely because a proposed plan is not filed in good faith does not mean it is in bad faith under 11 U.S.C. § 1307(c) and that a more appropriate solution would have been to deny confirmation of his plan rather than dismissing his case. Dkt. 6 at 6-9. Appellant Kelly argues that dismissing her case under 11 U.S.C. § 109(g) was inappropriate and that the Bankruptcy Court should have instead punished her with civil contempt. Appellant Polk argues that her case should not have been dismissed under 11 U.S.C. § 1307(c)(5) on feasibility grounds.

By contrast, Appellee argues that the Bankruptcy Court did not err in its decision to dismiss these cases and that many of these issues are not preserved for resolution on appeal as none of the appellants filed written responses or oppositions to Trustee's Motions to Dismiss as required by Local Rule 9013-1(H)(1) and (H)(4) of the Bankruptcy Court. Dkt. 14 at 6. Appellee further emphasizes that if Appellants wished to relitigate any new facts, they should have filed a Motion to Reconsider in the Bankruptcy Court under Federal Rules of Bankruptcy Procedure 9023 and

9024. Those provisions allow parties to seek relief based on newly discovered evidence, if the entry of the judgment was unfair or inappropriate, or if the party was not granted an adequate opportunity to appear and be heard. Dkt. 14 at 8. Appellee invokes the Supreme Court's decision in *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004), which states that under the Bankruptcy Rules, "a defense is lost if it is not included in the answer or amended answer." Dkt. 14 at 7 (quoting *Kontrick*, 540 U.S. at 459).

The Court will address each of the arguments set forth in the Appellants' briefs individually.

### A. Appellant Williams's Appeal

Appellant Williams argues that the Bankruptcy Court erred in dismissing his case for bad faith for three principal reasons. *See* Dkt. 16. First, he argues that a lack of repayment is only one of many factors considered in the good-faith inquiry outlined by *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982). Second, he maintains that the Bankruptcy Court's remedy of dismissal was inappropriate. And third, he states that the facts of his case compel a different finding on the good-faith question, including that the Bankruptcy Court should not have considered his VA benefits.

At the outset, Appellant Williams did not preserve these arguments for review because he did not raise them in a written brief or at oral argument in the Bankruptcy Court. Accordingly, the Court is powerless to entertain them now, as there are no exceptional circumstances warranting departure from that general rule. *See, e.g.*, *In re Arnold*, 869 F.2d 240, 244 (4th Cir. 1989) (concluding that "neither [the debtor] nor his counsel raised any objection in the bankruptcy court to the point now sought to be raised, and that is fatal on appeal"); *In re Paschall*, 408 B.R. 79, 87 (E.D. Va. 2009) ("District courts will not review issues raised for the first time on appeal except

9

under exceptional circumstances."). Accordingly, this Court affirms the Bankruptcy Court's determination as to its *Deans* factors analysis, its finding of Williams's lack of good faith, as well as its decision as to the appropriate remedy based on the record before it.

Even if these arguments against the plan's dismissal were preserved, though, they would not succeed for the following reasons.

### 1. *Deans* Good Faith Factors

Appellant contends that under *Deans v. O'Donnell*, a plan's low repayment value to creditors does not *per se* preclude a finding that the plan was filed in good faith, but is instead one of many factors to be considered. *See Deans*, 692 F.2d at 972. This argument was never raised in a written memorandum nor at oral argument in the Bankruptcy Court. Even so, the record shows that the Bankruptcy Court engaged in a "totality of the circumstances" inquiry, which is what *Deans* requires:

> Without attempting either to be exhaustive or to establish a criteria "check-list," these factors might include, depending on the particular case, not only the percentage of proposed repayment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order fairly to apply the statute as now written.

*Id.* In *Deans*, failure to provide substantial repayment to creditors coupled with possible bad faith led to the dismissal of a bankruptcy case. *Id.* The *Deans* factors are not exhaustive; furthermore, the Bankruptcy Court never stated that the only factor it considered was Williams's proposed repayment amount. In fact, the record reveals that the Bankruptcy Court assessed all available information regarding Appellant Williams's finances, the potential for dishonesty in his filing of a Chapter 13, and his past bankruptcy filings—including the Chapter 7 case he had filed just a few

10

years prior—before deciding to dismiss the case. Dkt. 3 at 7. Therefore, this Court concludes that the Bankruptcy Court's application of the *Deans* factors, and its finding of bad faith in Appellant Williams's case, was proper.

## 2. Dismissal Remedy

Williams also claims that the appropriate remedy in this case would be a denial of confirmation of the plan rather than an outright dismissal. In support, he cites the Supreme Court's decision in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007), where the Court wrote that "lack of good faith is an express statutory ground for denying plan confirmation." Dkt. 6 at 9-10 (quoting *Marrama*, 549 U.S. at 375 n.11).

Were it preserved on appeal, Williams's challenge to the Bankruptcy Court's chosen remedy would also fail. While *Marrama* indicated in a footnote that "the debtors conduct's must, in fact, be atypical" for a court to dismiss a Chapter 13 case for bad faith, *Marrama*, 549 U.S. at 375 n.11, this bit of dictum fails to directly support Williams's argument that a lack of good faith is distinct from a showing of bad faith. Furthermore, the Fourth Circuit has held that the Bankruptcy Code's omnibus provision for judicial administration, 11 U.S.C. § 105, vests bankruptcy courts with "authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code," *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989), including dismissals "for lack of good faith." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996) (citation omitted). Although a denial of confirmation is one remedy the Bankruptcy Court might have fashioned, that result would have required debtor to show good faith affirmatively, as "[g]ood faith is also necessary for a Chapter 13 plan to be confirmed under section 1325(a)." *Id.* at 148 (4th Cir. 1996) (citing *In re Solomon*, 67 F.3d 1128 (4th Cir. 1995) and *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986)). Even *sua sponte* dismissals by bankruptcy courts are permitted because "the Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy

courts to prevent the use of the bankruptcy process to achieve illicit objectives." *Id.* This Court finds nothing to suggest that the Bankruptcy Court abused its discretion in dismissing Appellant Williams's case.

### 3. Lack of Good Faith Finding

The Bankruptcy Court found Appellant Williams's case involved a lack of good faith based on the meager repayment plan he proposed, as well as his possible malfeasance in filing for Chapter 13 relief when he truly wanted—but was ineligible to obtain—a Chapter 7 bankruptcy. Dkt. 3 at 8. At the hearing, the Bankruptcy Court noted that Williams earned roughly $10,000 a month; under his proposed plan, however, he would have only been required to make $100 monthly payments, the majority of which would go to counsel fees. *Id.* at 6. The court found that roughly eighty-five to ninety percent of Appellant Williams's debt came from non-dischargeable student loans. But the Court also found that he had an additional $30,000 in non-student loan debt—*i.e.*, dischargeable debt he would still not be required to repay based on the proposed plan. *Id.* Appellant did not offer any arguments to counter the Court's finding regarding his intent in filing for Chapter 13 bankruptcy.

Appellant Williams argues that the party moving to dismiss a bankruptcy case bears the burden of demonstrating that the debtor acted in bad faith. He further argues that when a debtor's repayment plan is not filed in good faith, it does automatically follow that the plan was filed in bad faith. Dkt. 6 at 8 (citing *In re Ladieu*, No. 14-10551, 2015 WL 3503941, at *6 (Bankr. D. Vt. June, 2015)).

In the event this argument were preserved on appeal, it would fail. The Court will not supplant the Bankruptcy Court's factual findings with its own, especially where—as here—there appears to be ample support in the record to support the bad-faith finding of the court below. *See* Dkt. Nos. 3; 3-1; 3-2.

12

4. Consideration of VA Benefits in Good-Faith Inquiry

Unlike the preceding arguments, one argument Appellant Williams raises is properly preserved. *Id.* In the proceedings below, he emphasized that the Bankruptcy Court should not have considered his VA benefits in its good-faith inquiry regarding his proposed plan, Dkt. 3 at 6, and he presses that same argument on appeal. Specifically, he contends that because Social Security benefits are not included in the disposable-income calculation under federal statute, VA benefits should likewise not be included in the good-faith inquiry. Dkt. 6 at 15.

This Court is unpersuaded that the Bankruptcy Court, in its good-faith inquiry, committed error with respect to how it analyzed Appellant Williams's income derived from VA benefits. Appellant Williams relies on the Fourth Circuit's opinion in *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013) for this proposition, arguing that the "Fourth Circuit would likely conclude" certain VA benefits should be excluded from the disposable-income computation just as Social Security disability income is excluded. Dkt. 6 at 4. Williams correctly points out, however, that Congress added a statutory exclusion for certain VA disability income sources. *See id.*; *see also In re Borca*, No. 18-02019-5-DMW, 2021 WL 3370162, at *3 (Bankr. E.D.N.C. Aug. 2, 2021) (noting that subject to certain exceptions, "[t]he Honoring American Veterans in Extreme Need Act of 2019, also known as the HAVEN Act, added to the list of income excluded from 'current monthly income'" certain VA disability sources). Under the new exclusion, these sources include:

> Any monthly compensation, pension, pay annuity, or allowance paid under title 10, 37, or 38 in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services.

11 U.S.C. § 101(10A)(B)(ii)(IV). Appellant Williams referenced this recent development at the hearing, acknowledging that "Congress says they no longer count" "VA disability income" in Chapter 13 bankruptcy good-faith analyses. Dkt. 3 at 6. Instead, he argued, "[t]here have to be

13

other improprieties and elements of bad faith to justify" a finding of bad faith; that a debtor has access to considerable funds is, on its own, insufficient to support a bad-faith determination. *Id.*

Indeed, the Bankruptcy Court found at least two other improprieties in Williams's case. First, the record reveals the Bankruptcy Court considered "[t]he additional circumstance" that Williams "appear[ed] to be hiding behind a Chapter 13 until he's eligible to file a Chapter 7." *Id.* at 7. The court made this finding after Williams's counsel appeared to concede his client had filed "a Chapter 7 case without filing a Chapter 7 case." *Id.* at 6. Second, the court considered the fact that his creditors were getting "almost nothing" despite the fact that Defendant had $30,000 in non-dischargeable debt, adding that the dismissal would be without prejudice to Williams's ability to return with a case that offered some actual benefit to his unsecured creditors.

Based on the record, it is not entirely clear the Bankruptcy Court based its decision on Williams's VA disability income, even in part. What is clear, however, is that the court applied a totality-of-the-circumstances analysis, finding that the aforementioned "additional circumstance[s]" dictated its finding that Williams's proposed repayment plan had been offered in bad faith.[2] The Fourth Circuit has emphasized that bad faith exists when there is "an abuse of the provisions, purpose or spirit" of the Bankruptcy Code. *Neufeld v. Freeman*, 794 F.2d 149, 152-53 (4th Cir. 1986); *see also See In re Brown*, 742 F.3d 1309, 1312-13 (11th Cir. 2014) (concluding that filing for bankruptcy under Chapter 13 instead of Chapter 7 to avoid the latter's refiling restrictions does constitute an abuse of the spirit of the Bankruptcy Code).

Even assuming the Bankruptcy Court had improperly relied on Williams's VA disability income, such reliance was harmless error. *See Stevens v. Showalter*, 458 B.R. 852, 855 (D. Md.

---

[2] Among other evidence received at the hearing, the Bankruptcy Court heard argument regarding Williams's entertainment budget of two-hundred dollars, which Appellee observed was "twice his plan payment" of one hundred dollars. Dkt. 3 at 4.

14

2011) (observing that the "harmless error doctrine applies to a district court's review of the decision of a bankruptcy court"). The Bankruptcy Court cited multiple reasons for dismissing Appellant Williams's case; furthermore, the judge made clear that if Williams had simply "offered the creditors ten percent or twenty percent, this plan might have worked." Dkt. 3 at 7. Removing Williams's $3,600 in monthly VA disability income from his $10,000 in monthly income, it is his proposed monthly repayment amount of $100 still fell far short of the ten-to-twenty-percent benchmark the Bankruptcy Court identified. Assuming the Bankruptcy Court relied on Williams's VA disability income at all, any error in such reliance was harmless because it is apparent from the record that the Bankruptcy Court would have reached the same conclusion had it excluded the VA-derived income from the equation. "The harmless error standard calls for reversal when the appellate court lacks a fair assurance that the outcome of a [hearing] was not affected by evidentiary error." *In re Lebovitz*, 360 B.R. 612, 623924 (B.A.P. 6th Cir. 2007) (citations omitted). The court below analyzed the facts of this case, including multiple instances of Appellant Williams's bad faith, under the relevant totality-of-the-circumstances standard. Having reviewed the record, this Court finds no error in the Bankruptcy Court's consideration of Williams's monthly income, and his proposed repayment plan, within that legal framework.

B. Appellant Kelly's Appeal

Appellant Kelly argues that the dismissal under 11 U.S.C. § 109(g) was unwarranted because it is an "extraordinary statutory remedy" not justified by the circumstances and that a more appropriate remedy would have been for the Bankruptcy Court to find her in civil contempt rather than dismissing the case. Appellee maintains that Appellant's arguments are precluded as they were never raised in the Bankruptcy Court.

1.  11 U.S.C. § 109(g)

According to Kelly, Appellee sought dismissal in the Bankruptcy Court based on 11 U.S.C. § 1307(c)(1) regarding a cause for dismissal, but her case "was tried" on 11 U.S.C. § 109(g) grounds.  No. 1:20-cv-1443-RDA-IDD (E.D. Va. Dec. 17, 2020) (Dkt. 7 at 8).  Under 11 U.S.C. § 1307(c)(1), a case may be dismissed for cause "due to unreasonable delay by the debtor that is prejudicial to its creditors." 11 U.S.C. § 1307(c)(1).  And section 109(g) prohibits an individual from bringing a bankruptcy action if, within the last 180 days, she has been a debtor in a prior bankruptcy action "dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109.

Appellant Kelly argues that dismissal was not warranted under the totality-of-the-circumstances test based on the facts in evidence, that section 109(g) should have been included in the pleadings for the statute to be a proper basis for dismissal, and that dismissal under section 109(g) is an "extraordinary punishment" not warranted by the facts of her case.  Dkt. 7 at 1.  Kelly did not raise these points at oral argument during the Bankruptcy Court's hearing, nor did she submit them to the court in a written brief.  Her failure to assert these challenges in the Bankruptcy Court means she cannot raise them for the first time before a reviewing court.  *See, e.g.*, *In re Arnold*, 869 F.2d at 244; *In re Paschall*, 408 B.R. at 87.

Even if Kelly's arguments were preserved for appeal, they are unpersuasive.  Although Kelly argues that a section 109(g) dismissal should have been referenced in the pleadings as if it were a new claim being litigated, the Bankruptcy Court dismissed the case based on a finding of bad faith under 11 U.S.C. 1307(c), based on Appellant Kelly's violation of a court order.  The court applied the statutory remedy section 109(g) authorizes, barring Kelly from filing for bankruptcy again within the next 180 days.  Furthermore, the totality-of-the-circumstances test considers "the debtor's past bankruptcy filings, honesty in representing facts, and any unusual

16

problems facing the debtor." *Deans*, 692 F.2d at 972. The Bankruptcy Court apparently found a pattern of behavior in Kelly's willful disregard of court orders based on the Appellant repeatedly submitting payments through means other than certified funds, the method the Court directed. Dkt. 4 at 9. At the evidentiary hearing, Kelly offered no evidence as to why she did not comply. Based on the record before it, this Court finds no abuse of discretion in the Bankruptcy Court's decision to dismiss.

2. Remedy for Violating a Court Order

At the hearing on Appellee's Second Motion to Dismiss, Appellant Kelly argued that she should be subject to a "drop dead order" that would result in automatic dismissal of the case if she again violated the Bankruptcy Court's order, without need for another hearing. Appellant Kelly asked for this "last and final chance," but the Bankruptcy Court determined Kelly had already received all the grace she was due after the court entered its June 26, 2020 order rectifying her earlier bounced check payments and requiring all future payments to be made with certified funds.

In addition, Appellant Kelly argues that she should have been ordered to show cause by the Bankruptcy Court to explain and remedy her failure to comply with the court order after she violated its terms. But Appellee notes, and this Court agrees, that the Second Motion to Dismiss achieved the essential purpose of an order to show cause: to explain why the Bankruptcy Court should not dismiss her case. Dkt. 14 at 16. There was no need for the Bankruptcy Court to issue an order enforcing its own order, as the original June 26, 2020 payment-method order was sufficiently clear to demand Appellant's compliance. When she failed to obey the Bankruptcy Court's order, dismissal was appropriate.

Finally, Kelly argues that the Bankruptcy Court should have held her in civil contempt, rather than outright dismissing her case. Critically, Appellant Kelly offers no statutory authority

or controlling case that would suggest dismissal was unwarranted in the face of her violation of a court order. Rather, 11 U.S.C. § 109(g) expressly provides that when a case is dismissed for violating a court order, the debtor is barred from refiling for 180 days. Congress has determined that a violation of a court order can warrant dismissal; whether civil contempt was an alternate remedy available is therefore wholly irrelevant to this Court's function of reviewing the Bankruptcy Court's discretionary decisions for abuse of discretion. *See In re Yankah*, 514 B.R. 159, 163 (E.D. Va. 2014). Furthermore, under 11 U.S.C. § 105 bankruptcy courts are authorized to "tak[e] any action or making any determination necessary or appropriate to enforce or implement Court Orders or rules, or to prevent an abuse of process." *In re Kestell*, 99 F.3d at 148. Whether the Bankruptcy Court might have instead held Appellant Kelly in civil contempt is of no moment because the facts of her case meant dismissal was a permissible remedy. This Court finds that the Bankruptcy Court did not abuse its discretion in dismissing her case after repeated violations of a court order.

### C. Appellant Polk's Appeal

The Bankruptcy Court dismissed Appellant Polk's case under 11 U.S.C. § 1307(c)(8) for cause on feasibility grounds. On appeal, she argues that the Bankruptcy Court erred when it dismissed the case for cause because the case was actually "prosecuted" and dismissed under 11 U.S.C. § 1307(c)(5). Additionally, she argues that even under the section 1307(c)(8) standard, dismissal was inappropriate in light of the evidence presented.

Because the Bankruptcy Court plainly addressed Polk's case on grounds consistent with 11 U.S.C. § 1307(c)(8)—that is, "termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan"—her first argument is without merit. The Bankruptcy Court terminated the confirmed plan after considering Polk's *new* post-petition mortgage arrearages, which totaled two-and-a-half times the amount she

had already funded into the plan to reduce already-existing arrearages, and the lack of any change in her monthly fixed income. Appellee argued that this new development meant Polk's bankruptcy case had "moved backwards by a large amount." Dkt 3 at 3. The Bankruptcy Court agreed in dismissing the case, noting that "[g]oing forward is not going to be helpful in any appreciable way." *Id.* at 15. This Court will therefore turn to whether dismissal was inappropriate under the facts of Appellant Polk's case.

When the Bankruptcy Court held a hearing on Polk's proposed modified plan and Appellee's Motion to Dismiss, the court found that obligating Polk to address a $20,366 arrearage in post-petition mortgage payments, on top of $1,1000 monthly payments under the proposed modified repayment plan, would be too severe a burden for Polk. Dkt. 4 at 16. Specifically, the Bankruptcy Court stated that the remaining budget would leave Polk with only $400 a month for her and her daughter's living expenses. *Id.* This budget, the court found after hearing argument and receiving evidence at the hearing, was "too thin for two humans to begin with" and justified dismissing the case. Dkt. 14 at 15-16.

In the bankruptcy proceedings, Appellee argued that Appellant Polk's financial retrogression revealed the proposed modified plan was unfeasible and not brought in good faith. Dkt. 14 at 20. Notably, Polk did not identify any new source of income when she testified at the hearing, and her daughter testified that she was unemployed and hoped to gain employment at some point in the future. Dkt. 3 at 10-15. At the hearing, Appellant Polk did not testify or suggest that the Bankruptcy Court should have weighed her $15,000 of saved mortgage payments as a payment source or to meet budgetary shortfalls, although she did reference the savings in a line of questioning on direct examination. *Id.* at 11. And although Polk emphasizes that the computation should have included her daughter's potential future earnings, the Bankruptcy Court appropriately

19

cabined its determination to Polk's then-presently available funding sources. *See In re Solomon*, 67 F.3d 1128, 1132 (4th Cir. 1995) ("'[R]ather than engaging in hopeless speculation about the future,' a court should determine projected disposable income by calculating a debtor's 'present monthly income and expenditures' and extending those amounts over the life of the plan."). In addition, Polk references her health condition. But these facts are not newly discovered, and they do not raise a legal question that might warrant a *de novo* review of the Bankruptcy Court's factual findings. Accordingly, the Court finds no abuse of discretion as to its decision to dismiss Polk's Chapter 13 bankruptcy case.

## IV. CONCLUSION

Accordingly, for the reasons provided above, the Bankruptcy Court's orders of dismissal challenged in this consolidated appeal are AFFIRMED.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record for all parties and to close these civil actions.

It is SO ORDERED.

Alexandria, Virginia
September 20, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge